LAW OFFICES

# BENNETT M. EPSTEIN

100 LAFAYETTE STREET

NEW YORK, N.Y. 10013

(212) 684-1230

TELECOPIER (212) 571-5507

July 7, 2010

Hon. Stewart Dalzell
United States District Judge
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

                Re: <u>United States v. Alaa Allia Ahmed Mohamed</u>
                   Criminal No. 09-744-08

Dear Judge Dalzell:

      I represent Alaa Allia Ahmed Mohamed ("Mr. Mohamed"), the defendant named above. This letter is respectfully submitted as a Pre-Sentence Memorandum on his behalf.

      The salient facts are these: Mr. Mohamed, who is age 43 and has no criminal history, comes from an educated family in Egypt, has a degree from an Egyptian University in mathematics and has worked there as a mathematics teacher. He came to the United States late in the year 2000 to pursue his dream of teaching mathematics here, but after the events of September 11, 2001 intervened, he was unable to obtain employment or obtain a green card. However, since he had fallen in love with this country and with an American girl, he remained here, working in clothing stores and selling clothing in flea markets.

      It was in this capacity that Mr. Mohamed was one of five individuals who was approached by the main defendant in the case, Moussa Ali Hamdan ("Hamdan"), to assist in attempting to dispose of a quantity of counterfeit Nike sneakers which Hamdan, unbeknownst to Mr. Mohamed, had purchased from a confidential informant. On July 24, 2008, Hamdan, who had conducted all of the negotiations with the informant, brought Mr. Mohamed, who he introduced as his worker, and two of the other individuals, Maodo Kane ("Kane") and Michael Katz ("Katz"), to take possession of approximately 1600 pairs of the sneakers, for which they paid a total of $2500. Some of the sneakers were loaded into vans that day, and the rest were loaded four days later when Hamdan returned with Kane and Katz and paid the informant an additional $1,000. Two other individuals, Hamze El-Najjar and Moustafa Habib Kassem separately picked up and paid for 1940 pairs of the sneakers together with Hamdan on a later date.

According to the Pre-sentence Report (Paragraph 29), the total retail value of the roughly 1600 pairs of Nike sneakers purchased by the four defendants in the July 24th transaction was $246,200. Presumably this is based upon the top dollar "list" price of the sneakers at over $150 per pair, which Hamdan had negotiated to purchased for about $3500 or a little over $2.00 (Two Dollars) per pair. It was a deal that no self-respecting flea-marketeer was likely to pass up, and the result was that none of the defendants brought into the transaction by Hamdan did so.

Unlike most of the other defendants, who had legal status in the United States, Mr. Mohamed was detained when he was arrested on November 24, 2009, and remains in detention.

Mr. Mohamed entered a guilty plea on or about March 31, 2010. The Sentencing Guidelines to which he stipulated in his plea agreement are driven by the retail value of the counterfeit goods negotiated by Hamdan, between $200,000 and $400,000, which raises the base offense level of 6 by an additional 12-level increase, to Level 18. After adjustments for acceptance of responsibility, Mr. Mohamed's total offense level is 15 with zero criminal history points..

The Court has already sentenced two co-defendants. Kane, was sentenced to 9 months and, as related to me by the Government, the Court took into consideration the time he would serve in immigration custody. Hamze El-Najjar, who picked up the separate load of 1940 pairs of Nike sneakers, was sentenced to incarceration for one year and one day.

As of the date scheduled for sentencing, July 14, 1010, Mr. Mohamed will have already served almost 8 months.

We respectfully request a sentence of "time served" for Mr. Mohamed. We do so based primarily upon two factors. First, the guidelines themselves, which focus upon the high retail value of the original goods and not their inferior flea market counterpart, do not really correlate with the intended loss to the victim, see, e.g. United States v. Slater, 348 F.3d 666 (7th Cir. 2003). This inflated amount, while perhaps an appropriate starting point, is rather disproportionate to the role and modest $1500 contribution of Mr. Mohamed.

Second, as the Court has apparently recognized in the sentencing of Kane, it is likely that Mr. Mohamed, who has already served 8 months in local jails[1] awaiting sentencing, will spend additional time incarcerated in an immigration facility awaiting deportation. In addition to the severity of the penalty of "banishment", these facilities lack the programs and facilities of a normal federal prison, further adding to his punishment.

We therefore respectfully submit that a sentence of time served, to be followed by deportation, constitutes a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing under 18 United States Code 3553.

---

[1] To the best of this writer's knowledge, Mr. Mohamed has been bounced back and forth between Philadelphia, Ohio and Virginia.

Very truly yours,

Bennett M. Epstein

cc. Nancy Beam Winter, Esq.
    Assistant U.S. Attorney